**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DARYL HELLER AND DENISE HELLER, h/w** | ) ) ) | **CIVIL NO. 1:24-cv-00293-CCC** |
| **Plaintiff** | ) | |
| **v.** | ) ) | |
| **SELECTIVE INSURANCE COMPANY OF SOUTHEAST** | ) ) ) | |
| **Defendants** | ) | |

**DEFENDANT SELECTIVE INSURANCE COMPANY OF SOUTHEAST'S
MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

Defendant Selective Insurance Company of Southeast hereby move this Honorable Court to dismiss Count II of Plaintiffs' Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In support thereof, Selective alleges the following:

**I.    FACTS**

1.    Selective Insurance Company of Southeast ("SICSE/Selective") issued a policy of insurance to its named insureds Daryl Heller and Denise Heller, policy number "F 5214977," effective from June 20, 2017 to June 20, 2018 (the "Policy").

2.    Among other coverages, the Policy provides uninsured/underinsured motorists coverage ("UM/UIM").

3.    As alleged in the Complaint, "[o]n or about April 3, 2018 at approximately 9:47 p.m., Plaintiff, Daryl Heller was a passenger in a Nissan Marano,

operated by an individual identified as Janet Archer [hereinafter 'Ms. Archer.']"
Am. Compl. at ¶ 4.

4.      "On the above date and time, Ms. Archer was travelling westbound on
Penn Avenue in Reading, Pennsylvania."  Am. Compl. at ¶ 5.

5.      "At that same time, Kevin Berrios was travelling westbound in a 1990
Honda Civic, owned by Jackie Maldonado, directly behind Ms. Archer's vehicle."
Am. Compl. at ¶ 6.

6.      "At the aforementioned time, Ms. Archer slowed her vehicle to turn
right onto North Pine Street when suddenly and without warning Kevin Berrios
failed to slow his vehicle and violently struck the rear of Janet Archer's vehicle."
(the "Accident").  Am. Compl. at ¶ 7.

7.      As a result of the Accident, Plaintiff Daryl Heller alleges he suffered
severe and permanent injuries including but not limited to a neck and brain sprain
and strain, lumbar radiculopathy, and aggravation of lumbar spondylosis,
spondylolisthesis and stenosis and right knee injury, most of which required surgical
intervention.  Am. Compl. at ¶ 8.

8.      After the Accident Plaintiffs allege they were required to file a lawsuit
against the third-party tortfeasors, Kevin Berrios and Jackie Maldonado, in the Court
of Common Pleas of Berks County, Docket No. 20-3656.  Am. Compl. at ¶ 10.

27382792v1

9.     The lawsuit initiated by the Plaintiffs against Kevin Berrios and Jackie Maldonado was settled by the tortfeasors' insurance carrier Progressive, tendering the policy limits of $15,000.00.  Am. Compl. at ¶ 11.

10.     "At the time of the [Accident], Mr. Heller was insured by State Farm Insurance Company which issued a policy of insurance to insureds Daryl Heller and Janet Archer, policy no.: 319 7572-D06-38."  Am. Compl. at ¶ 12.

11.     "The State Farm Policy had underinsured motorist benefits in the amount of $25,000.00."  Am. Compl. at ¶ 13.

12.     "State Farm tendered the underinsured motorist benefits of $25,000.00 as compensation for Mr. Heller's injuries and damages."  Am. Compl. at ¶ 14.

13.     Plaintiffs allege that "[o]n or about August 18, 2021, Mr. Heller provided Selective with information via a demand package so Selective can properly evaluate Mr. Heller's underinsured motorist claim. The documents produced to Selective are as follows:

a) Western Berks Police Report;

b) Pinnacle Health medical records;

c) Select Physical Therapy medical records;

d) Hershey Outpatient Surgery Center medical records;

e) Penn State Health medical records;

f) Cleona Chiropractic medical records;

g) Penn State Bone and Health medical records;

h) Personal Injury Protection Log;

i) Health Insurance records;

j) Outstanding medical billing;"

Am. Compl. at ¶ 22.

14.    The Amended Complaint alleges that Mr. Heller continued to treat for his injuries through 2022.  Am. Compl. at ¶ 23.

15.    Plaintiffs further allege that on or about March 2, 2023, October 24, 2023, and December 6, 2023, they provided updated records and reports from Drs. Calvin Stoudt and Christian Fras.  Am. Compl. at ¶¶ 24-25, 27.

16.    Plaintiffs allege outstanding medical bills/liens in the amount of $85,952.83 "along with a viable wage loss and loss of future earnings capacity claim."  Am. Compl. at ¶ 30.

17.    "After providing Selective with the above noted medical records, operative reports, medical expert reports, and billing/lien information to evaluate Mr. Heller's underinsured motorist claim, Selective made an initial settlement offer of $60,000, which was rejected."  Am. Compl. at ¶ 31.

18.    "Selective gradually increased its settlement offers, culminating in a best and final settlement offer of $160,000 inclusive of all liens and costs."  Am. Compl. at ¶ 32.

27382792v1

19.    Plaintiff rejected Selective's $160,000 offer (separate and apart from the combined $125,000 already received from Progressive and State Farm from the tortfeasor and UM/UIM limits, respectively) "because it was not fair, reasonable or justified based on the proffered evidence, necessitating the filing of the within lawsuit."  Am. Compl. at ¶ 33.

20.    The Amended Complaint pleads three (3) counts in total.

21.    Count I of the Amended Complaint is presented by Plaintiff Daryl Heller for breach of contract against SICSE.

22.    Count II of the Amended Complaint is presented by Plaintiff Daryl Heller for statutory bad faith pursuant to 42 Pa. C.S. §8371 against SICSE.

23.    Count III of the Amended Complaint is presented by Plaintiff Denise Heller and is for loss of consortium.

## II.    <u>MOTION TO DISMISS STANDARD PURSUANT TO RULE 12(B)(6)</u>

24.    Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

25.    The Third Circuit has noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years.  Beginning with the Supreme Court's opinion in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), continuing with our opinion in [*Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir.

2008)] and culminating recently with the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 209-10 (3d Cir. 2009) (internal citations edited).

26.    In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff.  *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

27.    A court "need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss."  *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).  Additionally, a court need not assume that a plaintiff can prove facts that the plaintiff has not alleged.  *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

28.    A plaintiff must provide some factual grounds for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544.

6

29.    "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

30.    In *Iqbal*, the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.

31.    In deciding a Rule 12(b)(6) motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007).

## III.    <u>ARGUMENT</u>

32.    Count II of the Amended Complaint for statutory bad faith pursuant to 42 Pa. C.S. §8371 against SICSE, is insufficiently pled under *Twombly* and *Iqbal*.

33.    To succeed on a bad faith claim under § 8371, a "plaintiff must present clear and convincing evidence (1) that the insurer did not have a reasonable basis for denying benefits under the policy and (2) that the insurer knew of or recklessly disregarded its lack of a reasonable basis." *Rancosky v. Wash. Nat'l Ins. Co.*, 170 A.3d 364, 365 (Pa. 2017); *see also Zurich Am. Ins. Co. v. FTS USA, LLC*, 325 F. Supp. 3d 618, 630 (E.D. Pa. 2018).

27382792v1

34.    For these fact-specific claims, "[a] plaintiff must plead specific facts as evidence of bad faith and cannot rely on conclusory statements." *Toner v. GEICO Ins. Co.*, 262 F. Supp. 3d 200, 208 (E.D. Pa. 2017) (citing *Smith v. State Farm Mut. Auto. Ins. Co.*, 506 F. App'x 133, 136 (3d Cir. 2012) (affirming the dismissal of an insurance bad faith claim that pled conclusory statements without facts)).

35.    "A plaintiff cannot merely say that an insurer acted unfairly, but instead must describe with specificity what was unfair." *Id*.

36.    For example, in *Smith v. State Farm Mutual Automobile Insurance Company*, 506 F. App'x 133, 136 (3d Cir. 2012), the plaintiff alleged a bad faith action under § 8371.  In support of his bad faith claim, the plaintiff—like Plaintiff here—included a "laundry list" of alleged bad faith conduct, but provided no factual support to demonstrate the applicability of the laundry list's allegations to his case. *See id*. at 136-37.  As the court held:

> On its face, Smith's complaint (to which was attached copies of the parties' correspondence) fails to allege a legally sufficient cause of action for bad faith under § 8371. The complaint consists of conclusory statements unsupported by facts—State Farm, e.g., "breach[ed] covenants of good faith and fair dealing," (Compl. ¶ 62(r)), and "engag[ed] in unfair settlement negotiations." (Compl. ¶ 62(u)). There are no details describing what was unfair about the negotiations. Similarly, Smith simply asserts that State Farm "intentionally misrepresent[ed] coverage in the policy," (Compl. ¶ 62(d)), and "misrepresent[ed] facts and its evaluation of Plaintiff's claim," (Compl. ¶ 62(k)), without explaining what those misrepresentations may have been.

*Id*.

27382792v1

37.     The Third Circuit therefore upheld the district court's dismissal of the bad faith claim pursuant to Rule 12(b)(6). *Id.*

38.     Similarly, in in *Flynn v. Nationwide Insurance Company of America*, 2014 U.S. Dist. LEXIS 91431 (M.D. Pa. July 7, 2014), the Court was called upon to determine whether the plaintiff had sufficiently pleaded a bad faith claim according to the guidelines set forth in *Twombly* and *Iqbal*.

39.     The *Flynn* Court held that the plaintiff's general list of fifteen alleged acts of bad faith—none of which contained any further factual averments—was insufficient to survive a motion under Rule 12(b)(6):

> Plaintiffs allege that defendant engaged in bad faith by listing no fewer than fifteen acts. These include "failing objectively and fairly to evaluate plaintiffs' claim," "failing to adopt and implement reasonable standards in evaluating plaintiffs' claim," "failing to promptly offer reasonably payments to the plaintiffs," and "failing to make an honest, intelligent, and objective settlement offer." … These fifteen allegations are purely conclusory legal statements, and are not factual allegations sufficient to make out plaintiff's claim for bad faith. … For instance, plaintiffs claim that Nationwide engaged in "abusive claims handling" without explaining what the abusive behavior was. Plaintiffs also make the perfunctory allegation that Nationwide's payment offers weren't reasonable, but does not disclose what those offers were, what his damages were, or how defendant's offers were inadequate and unreasonable. These legal conclusions do not provide adequate support to make a plausible claim for bad faith.

*Id.* at **8-10; *see also Yohn v. Nationwide Ins. Co.*, 2013 U.S. Dist. LEXIS 80703, at **13-20 (M.D. Pa. Jun. 7, 2013) (dismissing bad faith claim with a similar list of conclusory allegations, and citing several cases reaching similar conclusions).

27382792v1

40.    Likewise, in *Schor v. State Farm Fire & Casualty Insurance Company*, 2015 U.S. Dist. LEXIS 33266 (E.D. Pa. Mar. 18, 2015), the court held that the plaintiff's bad faith claim alleged, "in cursory fashion only, that Defendant lacked a reasonable basis for denying Plaintiff's claim for benefits, without providing any factual allegations from which the Court could make a plausible inference that Defendant knew or recklessly disregarded its lack of a reasonable basis for denying benefits." *Id*. at **11-13.

41.    The court determined that such allegations—like those in the several other cases cited by the court in its opinion—were insufficient to state a bad faith claim: "Although such assertions perhaps suggest that a bad faith claim is *possible*, they do not allow for any non-speculative inference that a finding of bad faith is *plausible*. The Rule 12(b)(6) standards, as interpreted by *Twombly* and *Iqbal*, require more." *Id*. at *13 (emphasis in original).

42.    The court therefore granted the defendant's motion to dismiss. *Id*.

43.    Similarly, in *Williams v. USAA Casualty Insurance Company*, 2015 U.S. Dist. LEXIS 11707 (E.D. Pa. Jan. 30, 2015), the court dismissed the plaintiff's bad faith claim—with prejudice—pursuant to *Twombly* and *Iqbal*, having found that the allegations in the complaint were "solely conclusory," and that "[t]here are no factual allegations sufficient to make out Plaintiffs' claim for bad faith." *Id*. at **6-7.

44.     According to the court:

In the Complaint, Plaintiffs allege that Defendant failed to "objectively and fairly evaluate Plaintiffs' claims," failed to "implement reasonable standards in evaluating Plaintiffs' claim," "acted unreasonably and unfairly in response to Plaintiffs' claim," failed to attempt "in good faith to effectuate a fair, prompt and equitable settlement of Plaintiffs' claim. … Plaintiffs do not allege facts necessary to demonstrate what Defendant's actions actually were, why they were unfair or unreasonable, how such actions were carried out, or when such unreasonable or dilatory delay occurred.

\* \* \* \*

Plaintiffs present only legal conclusions which are not entitled to deference. Plaintiffs do not allege facts that tend to show that Defendant did not have a reasonable basis for denying the claim or that Defendant showed reckless disregard for said lack of reasonable basis. Plaintiffs' "bare-bones" conclusory allegations do not state a plausible bad faith claim.

*Id.  See also Groth v. State Farm Fire & Cas. Co*., 2015 U.S. Dist. LEXIS 51031, at \*6 (E.D. Pa. Apr. 17, 2015); *Allen v. State Farm Mut. Auto. Ins. Co*., 2015 U.S. Dist. LEXIS 30339, at \*6 (E.D. Pa. Mar. 12, 2015); *Mozzo v. Progressive Ins. Co.*, 2015 U.S. Dist. LEXIS 192, at \*8 (E.D. Pa. Jan. 5, 2015); *Mattia v. Allstate Ins. Co.*, 2014 U.S. Dist. LEXIS 86258, at \*12 (E.D. Pa. June 24, 2014).

45.     In the instant matter, the allegations which purport to demonstrate SICSE's alleged "bad faith" are exactly the type of "formulaic recitation" of the elements of a claim that the Third Circuit and this Court have found insufficient to survive a challenge under Rule 12(b)(6).

27382792v1

46.    The entire corpus of allegations in support of Plaintiffs' bad faith claim are contained in paragraph 44 of the Amended Complaint, which in turn are a laundry-list of sub-conclusions and rephrasings of a valuation dispute:

Selective's conduct, actions and omissions in failing to adequately compensate Mr. Heller and/or failing to offer to settle Mr. Heller's underinsured motorist benefits for a reasonable, fair, and justified amount considering the evidence provided, constitutes bad faith by Selective towards its insured, Daryl Heller in that Selective:

a) Acted deceptively and in bad faith by failing to properly investigate and evaluate Mr. Heller's claim despite being provided sufficient documentation, evidence, medical records, operative reports, expert reports and medical billing/lien information that shows Mr. Heller's claim is worth substantially more than the amount offered to settle his claim;

b) Repeatedly offered inadequate settlement amounts to Mr. Heller despite knowing the extensive medical treatment and surgery he received and will likely need in the future as a direct result of the subject crash;

c) Repeatedly offered inadequate settlement amounts to Mr. Heller despite knowing the extensive pain, suffering and limitations Mr. Heller experienced and will continue to experience in the future as a direct result of the subject crash;

d) Repeatedly offered inadequate settlement amounts to Mr. Heller despite knowing the substantial outstanding medical expense incurred and the future medical expense he will incur due to his injuries as outlined in the medical expert reports of Dr. Stoudt and Dr. Fras;

e) Repeatedly offered inadequate settlement amounts to Mr. Heller despite knowing the need for ongoing medical treatment as outlined in the medical expert reports of Dr. Stoudt and Dr. Fras;

f) Repeatedly offered inadequate settlement amounts to Mr. Heller despite knowing Mr. Heller's future limitations, restrictions, and inability to work as outlined in the medical expert reports of Dr. Stoudt and Dr. Fras;

g) Disregarded Mr. Heller's medical records, operative reports, medical expert reports, and medical billing/lien documentation and failed to make a reasonable evaluation of Mr. Heller's injuries based on the proffered evidence;

h) Failed to pay the policy limits and/or a substantial amount of the policy limits, especially where Mr. Heller provided medical records, operative reports, medical expert reports, and medical billing/lien documentation establishing that Mr. Heller's injuries and damages are significant, permanent, and directly related to the subject crash;

i) Failed to pay the policy limits and/or a substantial amount of the policy limits, especially where Mr. Heller medical records substantiate the extent and permanency of Mr. Heller's injuries, pain and suffering;

j) Failed to effectuate a prompt and equitable settlement and had engaged in unfair and deceptive trade practices to avoid payment despite knowing the severity and permanency of Mr. Heller's injuries as evidenced by the documentation and medical records provided to Selective;

k) Failed to effectuate a prompt and equitable settlement and had engaged in unfair and deceptive trade practices to avoid payment despite knowing that Mr. Heller's current and ongoing limitations, damages, pain and suffering are directly related to the subject crash;

l) Failed to effectuate a prompt and equitable settlement to avoid payment even though Selective has not disputed the causal relationship between Mr. Heller's injuries, damages, ongoing limitations, and/or pain and suffering and the subject crash;

27382792v1

m) Failed to make a reasonable settlement offer or payment to Mr. Heller despite knowing the severity and permanency of his injuries thereby compelling Plaintiff to institute a lawsuit and incur additional costs to recover those benefits rightly due to him;

n) Failed to pay the fair amount of Mr. Heller's underinsured motorist benefits and damages without a reasonable foundation to do so.

o) Failed to pay the fair amount of Mr. Heller's underinsured motorist benefits and damages even though Selective has not disputed the causal relationship between Mr. Heller's injuries/damages and the subject crash;

p) Failed to pay Mr. Heller's underinsured motorist benefits after supporting medical and wage loss documentation had been provided to the Selective;

q) Failed to attempt in good faith and effectuate a prompt, fair and equitable settlement of Mr. Heller's underinsured motorist claim;

r) Failed to objectively evaluate the medical evidence and wage loss information and make a reasonable settlement offer to Mr. Heller;

s) Failed to exercise the utmost good faith and discharge of its statutory and contractual duties to Plaintiff, Daryl Heller.

t) Lacked a reasonable basis to deny Mr. Heller's benefits and/or has recklessly disregarded its lack of reasonable basis in failing to properly pay Mr. Heller's claims despite being given adequate medical records and reports outlining the severity and permanency of Mr. Heller's injuries and damages.

u) Lacked a reasonable basis to deny Mr. Heller's benefits and/or has recklessly disregarded its lack of reasonable basis in failing to properly pay Mr. Heller's claims despite being given adequate medical records and reports outlining the Mr. Heller's past, present, and future pain, suffering, and limitations;

14

v) Lacked a reasonable basis to deny Mr. Heller's benefits and/or has recklessly disregarded its lack of reasonable basis in failing to properly pay Mr. Heller's claims despite being given adequate medical records and reports outlining the Mr. Heller's past, present, and future pain, medical expenses;

w) Lacked a reasonable basis to deny Mr. Heller's benefits and/or has recklessly disregarded its lack of reasonable basis in failing to properly pay Mr. Heller's claims despite being given adequate medical records and reports outlining the Mr. Heller's past, present, and future pain, wage loss and loss of earning capacity;

Am. Compl., ¶ 44.

47.    **Count II of the Complaint *pleads no facts whatsoever* in support of Plaintiffs' bad faith claim.**

48.    **In fact, every sub-allegation in paragraph 44 of the Amended Complaint, above, are all legal conclusions which must be disregarded when determining whether Plaintiff's bad faith claim meets the pleading threshold established by *Twombly* and *Iqbal*.** *See Malleus*, 641 F.3d at 563; *Fowler*, 578 F.3d at 210-11.

49.    **Plaintiff pleads no factual details pertaining to the two-part *Rancosky* test or any facts that support Plaintiff's contention that Selective violated § 8371.**

50.    Furthermore, every sub-allegation in paragraph 44 of the Amended Complaint, above, is nothing more than various rephrasings of an alleged "failure to

pay benefits" allegedly due under the Policy, or, a dispute as to the reasonableness of Selective's offer, in other words, a valuation dispute.

51.    A valuation dispute or allegations that a carrier "offer[ed] an amount at the lower estimated settlement range does not qualify as bad faith." *Thomer v. Allstate Ins. Co.*, 790 F. Supp. 2d 360, 376 (E.D. Pa. 2011); *see also Kosierowski v. Allstate Ins. Co.*, 51 F. Supp. 2d 583, 592 (E.D. Pa. 1999) ("The court also rejects the idea that negotiation--i.e., offering the bottom of an estimated settlement range--qualifies as bad faith in this case for similar reasons. Such an argument fails to consider the nature of the UIM policy purchased by plaintiff.")

52.    "Negligence or bad judgment do not constitute bad faith." *Calandrello v. Sentinel Ins. Co.*, 2013 U.S. Dist. LEXIS 79967, at *13 (M.D. Pa. June 7, 2013) (citing *Brown v. Progressive Ins. Co.*, 860 A.2d 493, 501 (Pa. Super. 2004)).

53.    Rather, "[t]o support a finding of bad faith, the insurer's conduct must be such as to 'import a dishonest purpose.' In other words, the plaintiff must show  that the insurer breached its duty of good faith through some motive of self-interest or ill will." *Id.*

54.    Here, the Amended Complaint specifically alleges that "[a]fter providing Selective with the above noted medical records, operative reports, medical expert reports, and billing/lien information to evaluate Mr. Heller's underinsured

motorist claim, Selective made an initial settlement offer of $60,000, which was rejected" and that "Selective gradually increased its settlement offers, culminating in a best and final settlement offer of $160,000 inclusive of all liens and costs." Am. Compl. at ¶¶ 31-32.

55.    Finally, because Plaintiffs' bad faith claim is nothing more than a recasting of their breach of contract allegations in Count I, and by extension Count III, Plaintiffs' bad faith claim at Count II is completely redundant and duplicative of their breach of contract claim.

56.    Even assuming, *arguendo*, Plaintiffs' bad faith claim were properly pled as a matter of law, once stripped of all of its legal conclusions and allegations of a valuation dispute, Plaintiffs' bad faith claim at Count II is factually no different from Plaintiffs' breach of contract claim at Counts I: that there was allegedly a contract between the parties, that Plaintiff has submitted a claim for UIM benefits allegedly due under the Policy, that SICSE made offers below Plaintiffs' perceived value of those injuries, and SICSE has therefore breached the contract between the parties and is liable for damages.

57.    Thus, once stripped of its bald legal conclusions and unsupported, conclusory statements, it is clear that the Amended Complaint contains inadequate allegations of actual **fact.**

27382792v1

58.     Rather, Plaintiff's bad faith claim is supported by little more than mere "labels and conclusions" and "'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S. at 677-78.

59.     Accordingly, Count II of the Amended Complaint should be dismissed with prejudice pursuant to Rule 12(b)(6).  *See Smith*, 506 F. App'x at 136 (affirming the dismissal of an insurance bad faith claim that pled conclusory statements without facts); *Toner*, 262 F. Supp. 3d at 208 ("A plaintiff cannot merely say that an insurer acted unfairly, but instead must describe with specificity what was unfair.").

WHEREFORE, Selective requests this Honorable Court grant its motion to dismiss in the instant matter, and dismiss Plaintiffs' bad faith claim at Count II of the Amended Complaint with prejudice.

**DATE:  May 17, 2024**                            **POST & SCHELL, P.C.**

BY:__*/s/ Jeffrey M. Brenner*_____
　　　　　　　**JEFFREY M. BRENNER, ESQ.**
　　　　　　　Attorney for Defendants
　　　　　　　Three Logan Square, 24th Floor
　　　　　　　1717 Arch Street
　　　　　　　Philadelphia, PA 19103
　　　　　　　Phone: 215-587-1133
　　　　　　　Fax: 215-587-1444
　　　　　　　E-mail: jbrenner@postschell.com