IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

DARYL HELLER AND DENISE      :
HELLER, H/W                  :        Docket No. 1:24-cv-00293-ccc
                             :
            Plaintiffs       :        JURY TRIAL DEMANDED
                             :
    v.                       :
                             :
SELECTIVE INSURANCE          :
COMPANY OF SOUTHEAST         :
                             :
                             :
            Defendant        :

**PLAINTIFFS' BRIEF IN OPPOSITION TO THE MOTION
TO DISMISS FILED BY DEFENDANT, SELECTIVE
<u>INSURANCE COMPANY OF SOUTHEAST</u>**

## **TABLE OF CONTENTS**

Table of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .ii

Exhibit Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

Statement of Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Questions Presented. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

      A.     The Instant Motion Must Be Denied Because Plaintiffs
              Have Alleged The Requisite Facts Entitling Them To
              The Relief Requested for Statutory Bad Faith. . . . . . . . . .7

      B.     In The Alternative, Should the Plaintiff Be Afforded
              Leave to Amend the Complaint Because The
              Amendment Would Not Be Futile. . . . . . . . . . . . . . . . . . .16

## TABLE OF AUTHORITIES

Cases:

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1964 (2007). ……………... . . . . . .6, 13

*Collins v. Allstate Ins. Co.,* 2010 WL 2510376 (Ed. Pa. 1997). . . . . . . . . . . . .14, 15

*Condio v. Erie Ins. Exchange,* 899 A.2d 1136 (Pa. Super. 2006). . . . . ….. . . . 8

*Fletcher-Harlee Corp. v. Pote Concrete Constr., Inc.*, 482 F.3d 247 (3d Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .………. . 16

*Giangreco v. U.S. Life Insurance*, 168 F.Supp.2d 147 (E.D. Pa. 2001) . . . . . . . . 8

*Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996). . . . . . . . . 16

*Grossi v. Travelers Personal Ins. Co.,* 79 A.3d 1141 (Pa. Super. 2013)…………. 8

*In re Burlington Coat Factory Sec. Ling.*, 114 F.3d 1410 (3d. Cir. 1997) . ……... .7

*In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410 (3d Cir. 1997). . ……...16

*Klinger v. State Farm Mut. Auto Ins. Co.*, 115 F.3d 230 (3d Cir. 1997). . ……. . .14

*Kosierowski v. Allstate Ins. Co.*, 51 F.Supp.2d 583 (E.D. Pa. 1999). . ……. . . . 14

*Lum v. Bank of America*, 361 F.3d 217 (3d Cir. 2004) . . . . ……. . . . . . . . . . . . 6

*Markowitz v. Northeast Land Co.*, 906 F.2d 100 (3d Cir. 1990) . . . . . ……. . . . .6

*Mountainside Holdings, LLC v. Am. Dynasty Surplus Lines Ins. Co.,* No. 2003-127, 2014 Pa. Dist. & Cnty. Dec. LEXIS 73 at \*13 (Centre Cty. 2014). . . . 8

*O'Donnell v. Allstate Ins. Co.*, 734 A.2d 901 (Pa. Super. Ct. 1999). . ……. . . .7, 15

*Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008) . . . . ……. . . . . . 6

*Pinker v. Roche Holdings Ltd.*, 292 F.3d 361 (3d Cir. 2002) . . . . . . . . . . . . . . . . . . .6

*Romano v. Nationwide Mut. Fire Ins. Co.*, 646 A.2d 1228 (Pa. Super. Ct. 1994) . 8

*Schmidt v. Skolas*, 770 F.3d 241 (3d Cir. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Terletsky v. Prudential Property & Casualty Ins. Co.*, 437 Pa. Super. 108 (1994).. 7

# **EXHIBITS**

## **TABLE OF CONTENTS**

**Exhibit "A"**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**Exhibit "B"**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

AND NOW, comes Plaintiffs, Daryl and Denise Heller, by and through their attorneys, Fanelli, Evans, & Patel, P.C., and submits the following Brief in Opposition to the Motion to Dismiss of Defendant, Selective Insurance Company of Southeast (hereinafter referred to as "Selective").

## I.    STATEMENT OF FACTS

The matter involves claims for breach of contract and statutory bad faith against Selective for its failure to properly evaluate, investigate, and pay Plaintiffs underinsurance motorists benefits for damages Plaintiffs are entitled to receive pursuant to the Selective automobile insurance policy that was in full force and effect at the time of an April 3, 2018 motor vehicle crash. The following facts are relevant to the disposition of the instant Motion.

On April 3, 2018 at approximately 9:47 p.m., Plaintiff, Daryl Heller [hereinafter "Mr. Heller"] was a passenger in a Nissan Marano, operated by an individual identified as Janet Archer [hereinafter "Ms. Archer"], travelling westbound on Penn Avenue in Reading, Pennsylvania. ***See* Rec. Doc. 10, Amended Complaint at ¶¶ 4-5.** At that same time, Kevin Berrios was also travelling westbound in a 1990 Honda Civic, owned by Jackie Maldonado, directly behind Ms. Archer's vehicle when suddenly and without warning Kevin Berrios failed to slow his vehicle and violently struck the rear of Janet Archer's vehicle. ***See id.* at ¶¶ 6-7.**

As a result of the crash, Mr. Heller suffered severe and permanent injuries to his head, neck, back and right knee for which he received extensive medical treatment. *See id.* **at ¶¶ 8-9.**

After the crash, Mr. Heller filed a lawsuit against the Defendants, Kevin Berrios and Jackie Maldonado, in the Court of Common Pleas of Berks County, Docket No. 20-3656 [hereinafter the "Lawsuit"]. *See id.* **at ¶10**. The Lawsuit settled for $15,000, which represented the policy limit of Progressive Insurance Company, the automobile insurance carrier for Ms. Maldanado. *See id.* **at ¶11**.

At the time of the subject crash, Mr. Heller was insured by State Farm Insurance Company which issued a policy of insurance to insureds Daryl Heller and Janet Archer, policy no.: 319 7572-D06-38 with underinsured motorist benefits in the amount of $25,000.00. *See id.* **at ¶¶ 12-13**. State Farm tendered the underinsured motorist benefits of $25,000.00 as compensation for Mr. Heller's injuries and damages. *See id.* **at ¶14**. At the time of the subject crash, Mr. Heller was also insured by Defendant, Selective Insurance Company of Southeast (hereinafter "Selective") which issued a policy of insurance to insureds Daryl Heller and Denise Heller, policy no.: F 5214977, effective from June 20, 2017 to June 20, 2018 (hereinafter the "Policy"). *See id.* **at ¶15**.

The Policy contained underinsured motorist benefits in the amount of $250,000.00, stacked with five (5) vehicles on the Policy for a total underinsured

motorist benefit of $1,250,000. The Policy was in full force and effect at the time of the crash set forth herein. At all times, Plaintiffs paid all premiums due and owing on the Policy. *See id.* **at ¶¶ 17-18**.

Prior to the third-party settlement, Mr. Heller opened an underinsured motorist claim with the Selective. Before Mr. Heller reached a settlement with the third-party insurance company and/or State Farm, he obtained consent to settle from Selective. *See id.* **at ¶¶ 19-20**.

On or about August 18, 2021, Mr. Heller provided Selective with information via a demand package so Selective can properly evaluate Mr. Heller's underinsured motorist claim. The documents produced to Selective included: Western Berks Police Report; Pinnacle Health medical records; Select Physical Therapy medical records; Hershey Outpatient Surgery Center medical records; Penn State Health medical records; Cleona Chiropractic medical records; Penn State Bone and Health medical records; Personal Injury Protection Log; Health Insurance records; Outstanding medical billing in the amount of $85,952.83. *See id.* **at ¶¶ 22, 30**.

Mr. Heller continued to treat for his injuries through calendar year 2022. Thereafter, on or about March 2, 2023, Mr. Heller provided updated records to Selective that included the operative reports for Mr. Heller's lower back surgery performed by Dr. Christian Fras and right knee surgery performed by Dr. Calvin Stoudt. On or about October 24, 2023, Mr. Heller provided Selective with a narrative

report from Dr. Calvin Stoudt, Mr. Heller's knee surgeon. In the report Dr. Stoudt opined that the Mr. Heller sustained a right knee injury secondary to the subject crash, which required arthroscopic surgery and will most likely require a total knee arthroplasty (replacement) in the future. *See id*. at ¶ 26; see also **Exhibit A, report of Dr. Calvin Stoudt.**

On or about December 6, 2023, Mr. Heller provided Selective with a narrative report from Dr. Christian Fras, Mr. Heller's back surgeon. In the report Dr. Fras opined that Mr. Heller's neck and back injuries including the lumbar radiculopathy, and aggravation of lumbar spondylosis, spondylolisthesis and stenosis as well as the L4-5 lumbar decompression with laminectomy, lysis of adhesions at L4-5, and posterior spinal fusion were casually related to the April 3, 2018 crash. Dr. Fras also opined that the surgery is not expected to yield complete resolution of Mr. Heller's symptoms and that annual pain management interventions will be needed, including three (3) lumbar epidural steroid injections, three (3) lumbar facet injections, lumbar radiofrequency ablation and placement of a spinal cord stimulator the cost of which will exceed $100,000.00. Dr. Fras notes that Mr. Heller's injuries and limitations will prevent him from working in the future. *See id*. **at ¶ 28-29;** *see also* **Exhibit B, Report of Dr. Christian Fras.** Mr. Heller also provided Selective with document confirming the amount of outstanding medical bills/liens in the amount of $85,952.83. *See id*. **at ¶ 30**. After providing Selective with the above noted medical

4

records, operative reports, medical expert reports, and billing/lien information to evaluate Mr. Heller's underinsured motorist claim, Selective made an initial settlement offer of $60,000, which was rejected. *See id.* **at ¶ 31**. Selective gradually increased its settlement offers, culminating in a best and final settlement offer of $160,000 inclusive of all liens and costs. The offer was rejected out of hand because it was not fair, reasonable or justified based on the proffered evidence, necessitating the filing of the within lawsuit. *See id.* **at ¶ 32-33**.

Selective argues that the statutory bad faith claim set forth in count II of the Amended Complaint should be dismissed. As discussed in greater detail below, the instant motion should be denied in its entirety because Plaintiffs have pled, with sufficient specificity, a cause of action for bad faith.

## II.    STATEMENT OF QUESTIONS PRESENTED

### A.    MUST THE INSTANT MOTION BE DENIED BECAUSE PLAINTIFF HAS PLEAD SUFFICIENT FACTS TO SUPPORT A CLAIM FOR BAD FAITH AGAINST SELECTIVE?

*Suggested answer: Yes.*

### B.    IN THE ALTERNATIVE, MUST THE PLAINTIFF BE AFFORDED LEAVE TO AMEND THE COMPLAINT BECAUSE AMENDMENT WOULD NOT BE FUTILE?

*Suggested answer: Yes.*

### III.    STANDARD OF REVIEW

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a pleading. *See Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir. 1990). In considering a 12(b)(6) motion, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

It is well-settled that when resolving a 12(b)(6) motion, a court should consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that are integral in framing the complaint. *See Lum v. Bank of America*, 361 F.3d 217, 222 (3d Cir. 2004); *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). A complaint may not be dismissed "merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Phillips,* 515 F.3d at 231 (citing *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1964-65, 1969 n.8 (2007)). Stated differently, what is required at the pleading state are factual allegations that possess enough heft to show that the pleader is entitled to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). The issue is not whether a plaintiff will ultimately prevail but whether the claimant

is entitled to offer evidence to support the claims. *In re Burlington Coat Factory Sec. Ling.*, 114 F.3d 1410, 1420 (3d. Cir. 1997).

As more fully set forth below, Plaintiffs asserted sufficient allegations establishing they are entitled to relief based upon Selective' s misconduct. As such, Selective has failed to meet its burden in seeking to dismiss Count II of Plaintiffs' Amended Complaint under Rule 12(b)(6).

IV.    **ARGUMENT**

A.    **THE INSTANT MOTION MUST BE DENIED BECAUSE PLAINTIFFS HAVE ALLEGED THE REQUISITE FACTS ENTITLING THEM TO THE RELIEF REQUESTED FOR STATUTORY BAD FAITH**

Selective argues that the statutory bad faith claim against it should be dismissed because the Amended Complaint asserts nothing more than conclusory allegations establishing a valuation dispute between the parties.

The Plaintiffs' bad faith claim is brought pursuant to 42 Pa. C.S.A. § 8371, which requires a showing "that the defendant did not have a reasonable basis for denying benefits under the policy and that defendant knew or recklessly disregarded its lack of reasonable basis in denying the claim." *Terletsky v. Prudential Property & Casualty Ins. Co.*, 437 Pa. Super. 108, 125 (1994).

The bad faith statute is not restricted to an insurer's misconduct in denying a claim, but also encompasses an insurer's bad faith in investigating a claim, *O'Donnell v. Allstate Ins. Co.*, 734 A.2d 901, 906 (Pa. Super. Ct. 1999), such as a

7

failure to conduct a reasonable investigation based upon available information,

*Giangreco v. U.S. Life Insurance*, 168 F.Supp.2d 147 (E.D. Pa. 2001), or failure to

communicate with a claimant, *Romano v. Nationwide Mut. Fire Ins. Co.*, 646 A.2d

1228, 1232 (Pa. Super. Ct. 1994).

In Pennsylvania, bad faith is not just a denial of coverage but also extends to

allegations that the insurer failed to make a good faith investigation of facts, and

failed to communicate with the claimant. *Grossi v. Travelers Personal Ins. Co.*, 79

A.3d 1141, 1151-52 (Pa. Super. 2013); *Mountainside Holdings, LLC v. Am.*

*Dynasty Surplus Lines Ins. Co.*, No. 2003-127, 2014 Pa. Dist. & Cnty. Dec. LEXIS

73 at *13 (Centre Cty. 2014). Pennsylvania courts require an insurance company

to articulate a reasonable, rational basis for a low offer. *Grossi*, 79 A.3d at 1152.

UIM claims are inherently adversarial, and no insurance company is required to

blindly accept an insured's demand based on the insured's valuation of the claim.

*Condio v. Erie Ins. Exchange*, 899 A.2d 1136, 1145 (Pa. Super. 2006).

Here, Selective asserts a factual defense of the bad faith claim: that the

parties merely disagree over the valuation of the claim.[1] This is a factual assertion

---

[1] It cannot go unnoted that Selective has failed to articulate a reasonable basis for presenting such low settlement offers throughout the course of negotiation despite being provide all pertinent information before the filing of the Complaint and Amended Complaint.

which is more properly contained in an answer to the claim of bad faith than in a Rule 12(b)(6) motion to dismiss.

Moreover, this is more than a mere "dispute over the value of a claim". Plaintiffs have alleged specific allegations establishing Selective' s misconduct in failing to properly evaluate, investigate, and settle Plaintiffs' claim.

In the Amended Complaint Plaintiffs set forth, in specific detail, the significant injuries Mr. Heller sustained as a result of the crash and his permanent limitations relating to same. Specifically, the Amended Complaint alleges that Mr. Heller was injured in a motor vehicle accident on April 3, 2018, which resulted in significant head, neck, back and knee injuries including disc bulges/protrusions, radiculopathy into hip/lower extremity and a tear of the medial meniscus. *Id*. at ¶¶ 4-8. Plaintiff had to undergo multiple treatments including physical therapy, injections, ablation therapy, arthroscopic right knee surgery and eventually, lumbar decompression surgery with laminectomy. *Id*. at ¶ 10. Plaintiff settled the third-party claim with Progressive for $15,000 and an underinsured motorist claim with State Farm for $25,000, to which Selective consented. *Id*. at ¶¶ 11-14. Mr. Heller then presented documentation to Selective including a police crash report, emergency room records, an MRI, medical records from his treating doctors, medical expert reports, as well as medical bills/lien information. *Id*. at ¶¶ 22-30. In response to this documentation Selective made unreasonably low settlement

offers, despite the seriousness of Mr. Heller's injuries and UIM benefits of over

$1,000,000. *Id.* at ¶¶ 31-32.

With that background established, the Amended Complaint goes on to

articulate specific facts describing Selective' s misconduct and how it acted in bad

faith towards the Heller's. Specifically, the Amended Complaint alleged the

following facts with regard to Selective' s bad faith:

- Acted deceptively and in bad faith by failing to properly investigate and evaluate Mr. Heller's claim despite being provided sufficient documentation, evidence, medical records, operative reports, expert reports and medical billing/lien information that shows Mr. Heller's claim is worth substantially more than the amount offered to settle his claim;

- Repeatedly offered inadequate settlement amounts to Mr. Heller despite knowing the extensive medical treatment and surgery he received and will likely need in the future as a direct result of the subject crash;

- Repeatedly offered inadequate settlement amounts to Mr. Heller despite knowing the extensive pain, suffering and limitations Mr. Heller experienced and will continue to experience in the future as a direct result of the subject crash;

- Repeatedly offered inadequate settlement amounts to Mr. Heller despite knowing the substantial outstanding medical expense incurred and the future medical expense he will incur due to his injuries as outlined in the medical expert reports of Dr. Stoudt and Dr. Fras;

- Repeatedly offered inadequate settlement amounts to Mr. Heller despite knowing the need for ongoing medical treatment as outlined in the medical expert reports of Dr. Stoudt and Dr. Fras;

- Repeatedly offered inadequate settlement amounts to Mr. Heller despite knowing Mr. Heller's future limitations, restrictions, and inability to work as outlined in the medical expert reports of Dr. Stoudt and Dr. Fras;

- Disregarded Mr. Heller's medical records, operative reports, medical expert reports, and medical billing/lien documentation and failed to make a reasonable evaluation of Mr. Heller's injuries based on the proffered evidence;

- Failed to pay the policy limits and/or a substantial amount of the policy limits, especially where Mr. Heller provided medical records, operative reports, medical expert reports, and medical billing/lien documentation establishing that Mr. Heller's injuries and damages are significant, permanent, and directly related to the subject crash;

- Failed to pay the policy limits and/or a substantial amount of the policy limits, especially where Mr. Heller medical records substantiate the extent and permanency of Mr. Heller's injuries, pain and suffering;

- Failed to effectuate a prompt and equitable settlement and had engaged in unfair and deceptive trade practices to avoid payment despite knowing the severity and permanency of Mr. Heller's injuries as evidenced by the documentation and medical records provided to Selective;

- Failed to effectuate a prompt and equitable settlement and had engaged in unfair and deceptive trade practices to avoid payment despite knowing that Mr. Heller's current and ongoing limitations, damages, pain and suffering are directly related to the subject crash;

- Failed to effectuate a prompt and equitable settlement to avoid payment even though Selective has not disputed the causal relationship between Mr. Heller's injuries, damages, ongoing limitations, and/or pain and suffering and the subject crash;

11

- Failed to make a reasonable settlement offer or payment to Mr. Heller despite knowing the severity and permanency of his injuries thereby compelling Plaintiff to institute a lawsuit and incur additional costs to recover those benefits rightly due to him;

- Failed to pay the fair amount of Mr. Heller's underinsured motorist benefits and damages without a reasonable foundation to do so;

- Failed to pay the fair amount of Mr. Heller's underinsured motorist benefits and damages even though Selective has not disputed the causal relationship between Mr. Heller's injuries/damages and the subject crash;

- Failed to pay Mr. Heller's underinsured motorist benefits after supporting medical and wage loss documentation had been provided to the Selective;

- Failed to attempt in good faith and effectuate a prompt, fair and equitable settlement of Mr. Heller's underinsured motorist claim;

- Failed to objectively evaluate the medical evidence and wage loss information and make a reasonable settlement offer to Mr. Heller;

- Failed to exercise the utmost good faith and discharge of its statutory and contractual duties to Plaintiff, Daryl Heller;

- Lacked a reasonable basis to deny Mr. Heller's benefits and/or has recklessly disregarded its lack of reasonable basis in failing to properly pay Mr. Heller's claims despite being given adequate medical records and reports outlining the severity and permanency of Mr. Heller's injuries and damages;

- Lacked a reasonable basis to deny Mr. Heller's benefits and/or has recklessly disregarded its lack of reasonable basis in failing to properly pay Mr. Heller's claims despite being given adequate medical records and reports outlining the Mr. Heller's past, present, and future pain, suffering, and limitations;

12

- Lacked a reasonable basis to deny Mr. Heller's benefits and/or has recklessly disregarded its lack of reasonable basis in failing to properly pay Mr. Heller's claims despite being given adequate medical records and reports outlining the Mr. Heller's past, present, and future pain, medical expenses;

- Lacked a reasonable basis to deny Mr. Heller's benefits and/or has recklessly disregarded its lack of reasonable basis in failing to properly pay Mr. Heller's claims despite being given adequate medical records and reports outlining the Mr. Heller's past, present, and future pain, wage loss and loss of earning capacity;

*Id.* at ¶¶ 44(a)-(w).

The above allegations, which this Court must accept as true for purposes of this motion, shows that Plaintiffs have more than sufficiently alleged facts showing that Selective lacked a reasonable basis in failing to properly pay Mr. Heller's claim. Stated differently, the Plaintiffs' factual allegations "possess enough heft to show that the [Plaintiffs are] entitled to relief. *Twombly, supra* at 555. There is no plausible basis for Selective, now over 5 years after the crash, to deny payment or failure to make a reasonable settlement offer after being provided all medical documentation as well as expert reports[2] to support Mr. Heller's claim.

---

[2] Of further significance is that the Selective has presented no evidence to dispute Mr. Heller's injuries, damages, medical bills or the opinions of Dr. Stoudt or Dr. Fras relating to the permanency of Mr. Heller's ongoing limitations or future treatment. In fact, Selective never even requested that Mr. Heller undergo an examination under oath or medical examination to dispute causation or attempt to justify its unreasonably low settlement offers.

13

While Selective contends that Plaintiffs' claim is not viable because it involves a "dispute over the value of their claim," Selective fails to recognize that allegations of delay in payment or under valuation are actionable under the bad-faith statute. In *Klinger v. State Farm Mutual Automobile Insurance Company*, 115 F. 3d 230 (3d Cir. 1997) liability attached for the insurer's delay in paying an insureds' claim for underinsured motorist benefits. In the *Klinger* case, the Third Circuit upheld a jury verdict of bad faith against the insurer for an excessive delay in paying two underinsured motorist claims. The *Klinger* Court reasoned that the bad faith claim was viable because liability was clear, the third-party insurer's coverage was inadequate to cover the plaintiffs' expenses, and the insurer unreasonably delayed payment to plaintiffs. In fact, even where a claim is eventually paid, "[d]elay is a relevant factor in determining whether bad faith has occurred." *Kosierowski v. Allstate Ins. Co.*, 51 F.Supp.2d 583, 588 (E.D. Pa. 1999), *citing Klinger v. State Farm Mut. Auto Ins. Co.*, 115 F.3d 230, 234 (3d Cir. 1997)).

Similarly, in *Collins v. Allstate Ins. Co.,* 2010 WL 2510376 (Ed. Pa. 1997), the Court concluded that the insurer's undervaluation of the plaintiffs' underinsured motorist claims constituted bad faith. The *Collins* Court emphasized that "a determination of bad faith is compelled and inescapable" explaining that "any valuation of plaintiffs' UIM claim for less than the policy limit was manifestly unreasonable" and that "with the information known and readily available to the

14

defendant, insurer, it lacked a reasonable basis for refusing Plaintiffs' claim for full benefits and acted in knowing or reckless disregard of the lack of such basis in denying those benefits." *Id.* The *Collins* Court noted, as in the present matter, the insurer's bad-faith conduct of failing to settle the claim despite possession of medical records demonstrating the seriousness of the injuries. *See, O'Donnell v. Allstate Ins. Co.*, 734 A.2d 901 (Pa. Super. 1999) (holding an insurer's delay in payment of a plaintiff's claim constituted bad faith reasoning that bad faith violations can arise from unfair claim settlement or compromise practices such as "delaying investigation or payment of claims.").

Here, Plaintiffs contend that Selective undervalued their claims and refused to pay the policy limits or a substantial amount of the limits where liability is clear and the seriousness and permanency of Mr. Heller's injuries and damages are well documented and undisputed. Despite this overwhelming evidence Selective has refused to make a good-faith offer on this claim.

In sum, Plaintiffs have alleged sufficient facts which establish, if taken as true, that (1) Selective refused to pay benefits under the policy, (2) had no reasonable basis for its refusal to pay benefits under the policy, and (3) known or should have known that it lacked a reasonable basis for a refusal to pay benefits. While Selective cites various case law in an attempt to support its motion to dismiss, the decisions referenced are irrelevant to the subject litigation given the

15

factual content provided in Plaintiffs' Amended Complaint. Plaintiffs' allegations provide a reasonable inference that Selective is liable for the misconduct alleged. Accordingly, Selective' s motion must be denied.

**B.    IN THE ALTERNATIVE, THE PLAINTIFFs SHOULD BE AFFORDED LEAVE TO AMEND THE COMPLAINT BECAUSE AMENDMENT WOULD NOT BE FUTILE.**

When addressing a motion to dismiss … a district court must grant leave to amend "irrespective of whether it is requested . . . unless doing so would be futile." *Fletcher-Harlee Corp. v. Pote Concrete Constr., Inc.*, 482 F.3d 247, 251 (3d Cir. 2007). An amendment is "futile" if "the complaint, as amended, would fail to state a claim upon which relief could be granted." *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1434 (3d Cir. 1997) (citing *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996).

It is respectfully suggested that amendment would cure any defect identified by this Court. Plaintiffs would respectfully request the opportunity to do so should this Court identify deficiencies in the pleading.

FANELLI, EVANS & PATEL, P.C.

By:   /s/ James J. Amato
　　JAMES J. AMATO, ESQUIRE
　　I.D. No. #203523
　　No. 1 Mahantongo St.
　　Pottsville, PA 17901
　　(570) 622-2455
　　jamato@feplawyers.com
　　*Attorneys for Plaintiffs*

16

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

DARYL HELLER AND DENISE          :
HELLER, H/W                      :        Docket No. 1:24-cv-00293-ccc
                                 :
           Plaintiffs            :        JURY TRIAL DEMANDED
                                 :
      v.                         :
                                 :
SELECTIVE INSURANCE              :
COMPANY OF SOUTHEAST             :
                                 :
           Defendant             :

## CERTIFICATE OF SERVICE

I, James J. Amato, Esquire, hereby certify that on the date noted below, a true and correct copy of the foregoing **Brief in Opposition to Defendant's Motion to Dismiss** was served upon the following party via e-filing only:

**VIA EMAIL ONLY:**
**Jeffrey M. Brenner, Esq.**
Post Schell
1717 Arch Street
Philadelphia, PA 19103
*Counsel for Defendant*

By: /s/ James J. Amato
JAMES J. AMATO, ESQUIRE
*Attorney for Plaintiffs*

DATED:___May 31, 2024